Jackson *v.* The State.

---

No. 14,577.

## Jackson *v.* The State.

CRIMINAL LAW.—*Adultery and Fornication.—Cohabitation.*—To cohabit with another in a state of adultery or fornication, within the meaning of section 1991, R. S. 1881, is for a man and woman to live together in the manner of husband and wife, for some period of time.

SAME.—*Evidence.*—To sustain an indictment under the section mentioned, the evidence must establish cohabitation, including one or more acts of sexual intercourse. The intercourse may be inferred from proven circumstances, which raise such a presumption of guilt as to leave no reasonable doubt in that respect in the minds of the jury.

SAME.—*Argument of Counsel.—Misconduct.*—In his closing address to the jury the prosecuting attorney used the following language: " Washington Jackson's wife is broken-hearted over his conduct in connection with

this woman. I know what I am talking about. I have been to Green-field, and heard the evidence before the grand jury, and I know what those people think about this case."

*Held*, that the language is improper, and the trial court having failed to instruct the jury to disregard it, the judgment of conviction must be reversed.

From the Henry Circuit Court.

*J. Brown* and *J. W. Morris*, for appellant.

*L. T. Michener*, Attorney General, and *J. H. Gillett*, for the State.

MITCHELL, J.—Jackson was indicted and found guilty under section 1991, R. S. 1881, which imposes a fine of not exceeding five hundred dollars, and imprisonment in the county jail not exceeding six months, upon any one who cohabits with another in a state of adultery or fornication.

To cohabit, in the sense of the statute, is for a man and woman to live together in the manner of husband and wife. *State* v. *Chandler*, 96 Ind. 591.

It implies a dwelling together for some period of time, and is to be understood as something different from occasional, transient interviews, for unlawful and illicit intercourse. To sustain an indictment under this section, the evidence must establish cohabitation, including one or more acts of sexual intercourse, between parties not lawfully occupying the relation of husband and wife to each other. From the very nature of the case, it will rarely happen that direct and positive evidence of acts of illicit intercourse can be obtained. Accordingly, the unlawful and lascivious commerce may be inferred from circumstances proven, which raise such a presumption of guilt, as leaves no reasonable doubt, in that regard, in the minds of the jury.

On the appellant's behalf it is insisted that the evidence fails entirely to support the verdict. It is sufficient to say that while the facts and circumstances show such a relation between the parties as might well have warranted the con-

clusion that the appellant was guilty of· adulterous intercourse with the person named in the indictment, it is not clear from the evidence but that the illicit acts were of an occasional character, unaccompanied by any pretence of the parties living together.

Without further consideration of the evidence, however, the judgment must be reversed for reasons which follow.

During his closing address the prosecuting attorney made the following statement to the jury:

"Washington Jackson's wife is broken-hearted over his conduct in connection with this Lowe woman. I know what I am talking about. I have been to Greenfield, and heard the evidence before the grand jury, and I know what these people think about this case."

The bill of exceptions shows that counsel for the defendant promptly objected, and asked the court to instruct the jury to disregard the statements so made, but the court refused to so instruct the jury, and thereupon stated to counsel, in the hearing of the jury, that the court would not undertake to decide between counsel as to what arguments had been void, but the jury would no doubt determine the cause on the evidence.

An exception was duly taken. No attempt is made, as, indeed, none could well be, to vindicate or justify the extraordinary speech of the prosecuting attorney; but it is said that the non-interference of the court must have resulted from the fact that it did not understand what was said, and that counsel were in dispute about it, and that the court did all that was proper in saying that the jury would doubtless decide the case on the evidence.

We can not adopt this view of the matter. We must assume that the court understood that the prosecuting attorney used the language above set out in the bill of exceptions. There does not appear to have been any dispute between counsel, or any failure of the court to understand, so far as the speaking of these words is concerned. There is nothing

to indicate any provocation or justification for such an extra-professional speech. It was the duty of the court to admonish the jury in no uncertain language to disregard the statement.

The evidence not being wholly satisfactory in the respect already mentioned, we can not say but that the verdict resulted from this error. We must therefore reverse the judgment.

Judgment reversed.

Filed Jan. 5, 1888.